IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01830-CMA-MEH

COLORADO MILLS, LLC, a Colorado limited liability company,

  Plaintiff,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania insurer,

  Defendant.

---

## ORDER ON MOTION TO COMPEL

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff has filed a Motion to Compel [filed February 21, 2013; docket #27], which has been referred to this Court for disposition [docket #28]. The matter is fully briefed, and the Court has conducted an *in camera* review of the challenged withheld documents. For the reasons that follow, the Court **grants in part** and **denies in part** the motion to compel.

## BACKGROUND

Plaintiff initiated this action on July 12, 2012. Essentially, Plaintiff alleges that Defendant, in bad faith, breached its duty to defend and/or advance defense fees in connection with covered claims asserted against the Plaintiff. Defendant counters that its decision to deny was correct in that the claim was not first made during the policy period as required and Plaintiff made material representations in the application for insurance.

In the present motion, Plaintiff seeks disclosure of documents and communications characterized as confidential by Defendant pursuant to the attorney-client privilege and work product doctrine. Specifically, Plaintiff wants copies of the contents of the claim investigation file

dated before Defendant's June 30, 2011 decision to deny Plaintiff's claim ("challenged documents").

With respect to this matter, the Court finds the following facts are necessary to consider in evaluating the motion.  On December 8, 2010, Plaintiff filed a claim with Defendant seeking reimbursement of its defense fees and costs pursuant to the applicable insurance policy for the prosecution and defense of the underlying civil claims to be adjudicated in an arbitration and for the bankruptcy proceedings involving a related entity, Colorado Sun Oil Processing ("CSOP").  Complaint, ¶¶ 14-18, docket #4.  The Defendant retained Sedgwick, Detert, Moran & Arnold LLP ("Sedgwick") to investigate whether the claim was covered under the policy.  On March 21, 2011, Sedgwick issued a letter informing the Plaintiff that Defendant denied coverage for the bankruptcy proceeding, but, under a reservation of rights, would reimburse defense costs for the arbitration involving the counterclaims against the Plaintiff.  Docket #55-6.  On April 6, 2011, Plaintiff responded to Sedgwick challenging some findings by Sedgwick on behalf of Defendant concerning allocation of the fee reimbursement between Plaintiff's affirmative claims and Plaintiff's defense of counterclaims, as well as concerning the selection of Allen & Vellone as counsel for Plaintiff and whether fee reimbursement should be ongoing.  Docket #43-6.  In this letter, Plaintiff demanded a response within five days; "[o]therwise, we will be forced to proceed with an insurance bad faith claim, along with other tort and contract claims at our disposal against Philadelphia." *Id.*  On June 30, 2011, Sedgwick issued a letter informing Plaintiff that Defendant denied coverage for the tendered claims.  Complaint, ¶ 22, docket #4.

Defendant opposes the Plaintiff's present motion arguing that it has properly withheld documents in the investigation file that pertain to legal advice sought and/or provided by the

attorney/investigator, and to work produced in anticipation of litigation.  To evaluate whether the challenged documents are privileged or, otherwise, protected, the Court directed Defendant to produce copies of the documents to the Court for *in camera* review.  Upon review of the challenged documents, as well as the motion and the briefing, the Court is now fully advised as to the matters raised and finds as follows.

## DISCUSSION

I.      **Legal Standards**

In diversity jurisdiction cases such as this one, state law controls the issues of privilege raised by the parties.  *See* Fed. R. Evid. 501 (2012); *see also Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (1998).  In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations."  *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Court in and for Tenth Judicial Dist.*, 533 P.2d 32, 35 (Colo. 1975)); *see also People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006) ("the attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations").  The privilege applies only to communications under circumstances giving rise to a reasonable expectation that the communications will be treated as confidential.  *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)).  Mere statements of fact are not protected by the attorney-client privilege.  *Trujillo*, 144 P.3d at 545 (citing *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000) (noting that "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged

facts that are incorporated into a client's communication to his attorney")).  "The burden of establishing the applicability of the attorney-client privilege rests with the claimant of the privilege." *Black v. Southwestern Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003) (citing *Clark v. District Court*, 668 P.2d 3, 8 (Colo. 1983)); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining Inc.*, 136 F.3d at 702 n. 10 (internal quotation omitted).  To be subject to the work product doctrine the materials must have been "prepared in anticipation of litigation.  It does not protect materials prepared in the 'ordinary course of business.'" *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) (citation omitted).  Thus, to receive work product protection, the party resisting discovery must demonstrate that the information at issue "was prepared by the attorney in anticipation of litigation or for trial." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184-85 (10th Cir. 2010); *see also Pepsico, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002) (stating that "[i]n order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the *prospect* of litigation") (emphasis added).

The court in *Martin v. Monfort, Inc.*, 150 F.R.D. 172 (D. Colo. 1993), set forth a process to be considered in determining a claim for work product protection:

> Rule 26(b)(3) ... contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney,

> consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Id.* at 172-73 (internal citations omitted).

## II.     Do the Privileges Apply?

Defendant contends that it is properly withholding the challenged documents on the bases of the attorney-client privilege and/or the work product doctrine.  The Court will analyze each doctrine to determine whether either applies to justify Defendant's non-disclosure of the challenged documents.

### A.     Attorney-Client Privilege

"Not every document drafted by counsel or every communication with counsel is protected by the attorney-client privilege." *Hurtado v. Passmore & Sons, L.L.C.*, No. 10-cv-00625-MSK-KLM, 2011 WL 2533698, at *4 (D. Colo. June 27, 2011) (citing *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court*, 718 P.2d 1044, 1049 (Colo. 1986)).  For example, the attorney-client privilege does not protect the results of a factual investigation conducted by counsel relating to the origination of an insurance policy and the validity of a claim. *Nat'l Farmers Union Prop. & Cas. Co.*, 718 P.2d at 1048-49.  Moreover, "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the privilege created by this statute nor the work product privilege protects communications from a lawyer to an insurance carrier." *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998)

5

(citing *Nat'l Farmers Union Prop. & Cas. Co.*, 718 P.2d at 1044) (concluding that, although some information disclosed may have been privileged, defendant did not make a sufficient showing of prejudice to find reversible error by the trial court).

To determine whether any of the challenged documents are subject to the attorney-client privilege, the Court must consider whether: (1) the information was provided by agents of the corporate client "to counsel acting as counsel" at the direction of supervisors, (2) the information was necessary for the provision of legal advice, (3) the agents were aware that their communications were made for the purpose of counsel rendering legal advice to the corporate client; and (4) the communications were treated as confidential. *Nat'l Farmers Union Prop. & Cas. Co.*, 718 P.2d at 1049 (citing *Upjohn Co. v. United States,* 449 U.S. 383, 394-95 (1981)).

### 1.    Documents re: Coverage

As set forth in its privilege logs, Defendant withholds certain documents contained in the insurance claim file, claim notes, and correspondence that reveal communications between Defendant and Sedgwick.  Defendant contends that "coverage analysis" by Sedgwick is different than claim investigation and, thus, any communication concerning coverage analysis is privileged and properly withheld.  Importantly, Defendant cites no case law nor other authority supporting this contention.

In fact, the mere retention of an attorney to investigate a claim does not automatically render privileged all communications concerning the investigation.  In *Nat'l Farmers Union Prop. & Cas. Co.*, the insurance company invoked the attorney-client privilege with respect to a memorandum "prepared by outside counsel in response to a request for legal advice relating to an investigation of the origination of the policy and the validity of the claim."  718 P.2d at 1048.  The Colorado

Supreme Court determined that none of the *Upjohn* factors applied to the challenged portion of the memorandum that contained information from "interviews with various officers and employees for the purpose of determining the factual circumstances underlying the issuance of the policy." *Id.* at 1049. The court concluded that, with respect to this portion of the memorandum, "the attorneys were acting more in the role of claims investigators than legal counsel for NFU." *Id.*

Here, a review of documents from December 2010 to June 2011 concerning coverage reveals that Defendant was not solely seeking legal advice from Sedgwick as counsel but, rather, Defendant largely sought factual information and an evaluation concerning whether Plaintiff's claims were covered. Certainly, insurance claims adjustors/representatives provide the same type of investigation and evaluation for their insurance company employers. *See Western Nat'l Bank of Denver v. Employers Ins. of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985) (noting that materials created by attorneys acting in the capacity of investigator and adjustor for an insurance company are prepared in the ordinary course of business); *see also St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 636 (N.D. Iowa 2000) (in analyzing a work product question, the court concluded that "an insurer's investigation of whether *coverage* exists is required and the conduct of that much of its investigation is assuredly in the ordinary course of its business") (emphasis in original).

In addition, some of the withheld communications here do not seek legal advice at all. Furthermore, most written communications (here, emails) do not reflect that the parties to the communications considered the content to be confidential; that is, there is no indication in the content of the communication that the parties intended to keep the content confidential. And, although Defendant argues its claim representative, Susan Shue, testified that she sought "advice"

from Sedgwick on certain occasions, a review of the documents reveals that any such advice with respect to coverage actually consists of Sedgwick's evaluation of its investigation. Therefore, Defendant fails to demonstrate the first, second and fourth *Upjohn* factors with respect to certain written communications (as listed below), and the privilege does not apply.[1]

2.      Documents re: Rates and Allocation of Attorney's Fees

However, the Court agrees with Defendant that "issues" arose during the course of the investigation concerning the rates (fee per hour) to be reimbursed to Plaintiff's counsel and the allocation of fees to reimbursed – that is, whether Defendant would pay Plaintiff's attorney's fees for both prosecution and defense of claims. During this time, Defendant sought advice from Sedgwick as counsel concerning these issues. Because the information provided by and to Defendant concerning rates and allocation of attorney's fees was intended to be confidential between the attorney and client, the Court concludes that all communications between Defendant and Sedgwick regarding the rates and allocation are privileged and need not be disclosed.

B.      <u>Work Product Doctrine</u>

Protection under the work-product doctrine in diversity cases is governed by federal law as set forth in Fed. R. Civ. P. 26(b)(3). The doctrine generally protects from disclosure in discovery those documents prepared in anticipation of litigation by or for a party or its representatives, including its attorneys. Fed. R. Civ. P. 26(b)(3)(A). Such documents need not be produced absent a showing by the opposing party that it "has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* Even

---

[1] The Court notes that the documents consist primarily of email communications and, in many respects, the attachments to these emails were neither listed on the privilege log nor provided *in camera*; thus, the Court assumes copies of the attachments have been provided in discovery.

if such a showing has been made, the Court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

"Because a substantial part of an insurance company's business is to investigate claims made by an insured against the company ..., it must be presumed that such investigations are part of the normal business activity of the company and that reports and witness' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials." *Stillwell v. Executive Fund Life Ins. Co.,* No. 89-A-245, 1989 WL 78159, at *3 (D. Colo. July 12, 1989) (quoting *Hawkins v. District Court,* 638 P.2d 1372, 1378 (Colo. 1982)); *see also St. Paul Reinsurance Co.*, 197 F.R.D. at 636 ("An insurer cannot shield its entire claims investigation behind the work product privilege simply by hiring an attorney to perform what is in the ordinary course of the insurer's business.").

Thus, when an insurance company contends that documents generated in its investigation of a claim are protected work product, it has the burden of demonstrating that the documents were "'prepared or obtained in order to defend the specific claim which already had arisen and, when the documents were prepared or obtained, there was a substantial probability of imminent litigation over the claim, or a lawsuit had already been filed.'"  *Id.* (quoting *Hawkins*, 638 P.2d at 1379). "Determining whether anticipated litigation is the driving force behind the preparation of each requested document is the central inquiry in resolving work product questions."  *Smith v. Marten Transp., Ltd.*, No. 10-cv-00293-WYD-KMT, 2010 WL 5313537, at *3 (D. Colo. Dec. 17, 2010) (quoting *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000)).

1.      Documents re: Coverage

Defendant contends that it anticipated litigation from nearly the inception of the claim in December 2010 due to the issues concerning rates and allocation of attorney's fees.  The Court disagrees; neither the briefing nor the documents produced *in camera* reveal any indication of the potential for a lawsuit between the Plaintiff and Defendant before June 30, 2011 concerning whether Plaintiff's claim for reimbursement of defense costs would be covered by Defendant.  In fact, Defendant's representative assigned to Plaintiff's claim, Susan Shue, testified that she did not consider Plaintiff's tender of the claim on December 8, 2010 to be a threat of litigation against Defendant.  Deposition of Susan Shue, March 15, 2013 ("Shue depo") at 149: 7-15, docket #55-3. The record reflects that no other "threats" or suggestions of litigation concerning whether Defendant would cover Plaintiff's claim and reimburse defense costs pursuant to the policy were tendered by Plaintiff before June 30, 2011.  Therefore, the Court concludes that documents regarding whether the policy covered Plaintiff's claim are not protected from disclosure by the work-product doctrine. *See St. Paul Reinsurance Co.*, 197 F.R.D. at 637 (finding that investigative materials were not protected, "even if they include mental impressions, conclusions, and opinions of [the attorney conducting the investigation] regarding the availability of coverage, because these impressions, conclusions and opinions are part of the pure investigation and evaluation of coverage, not part of preparation for or anticipation of litigation.").

2.      Documents re: Rates and Allocation of Attorney's Fees

However, on April 6, 2011, Plaintiff's counsel tendered a letter to Sedgwick on behalf of Defendant challenging Defendant's position regarding Plaintiff's counsel's hourly rates and whether the law firm was properly selected/approved as counsel to be reimbursed under the policy, as well

10

as Defendant's position that Plaintiff allocate fees necessary for the prosecution of Plaintiff's claims (not to be reimbursed) and fees necessary for Plaintiff's defense of counterclaims against it (to be reimbursed). In that letter, Plaintiff argued that Colorado law governing claims for breach of good faith and fair dealing would support any claims Plaintiff may have concerning these issues.[2] Plaintiff demanded a response within five days; "[o]therwise, we will be forced to proceed with an insurance bad faith claim, along with other tort and contract claims at our disposal against Philadelphia." Docket #43-6. The Court construes this letter as a threat of litigation concerning Plaintiff's counsel's rates and Defendant's requirement to allocate attorney's fees, and concludes that documents prepared in anticipation of litigation concerning these issues after April 6, 2011 are protected by the work-product doctrine.

The next question, then, is whether the Plaintiff has demonstrated a substantial need for the materials in the preparation of its case and the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. *Martin*, 150 F.R.D. at 172-73. First, however, the Court must note that many documents withheld under this category were also withheld based upon the attorney-client privilege and are protected on that basis. As for work product, Defendant redacted the following documents[3] falling under this category based only upon the work-

_____

[2]Importantly, Plaintiff does not challenge or threaten litigation as to coverage of the claim under the applicable policy; in fact, Plaintiff states in its April 6, 2011 letter, "it is apparent by your March 21st letter that you generally admit Philadelphia's responsibility to reimburse the insurance defense costs in the arbitration." Docket #43-6. Certainly, this statement demonstrates that Plaintiff did not perceive any challenge by Defendant, at that time, to the issue of whether the claim was covered.

[3]Although some of these documents are dated prior to April 6, 2011, it is unclear when the redacted handwritten notes were made; therefore, because it is possible the notes were made following receipt of the April 6, 2011 letter, the Court will include the documents in this category.

product doctrine: PIIC-CORR0003, 0005, 0011-12, 0035, 0042, 0141 (in part), 0292, 0302 and 0379. As described in the Correspondence File Privilege Log, these documents are letters, emails or pleadings containing hand-written notes by attorneys, which have been redacted.

Plaintiff argues generally that it has a substantial need for withheld materials dated prior to June 30, 2011, because they are "essential to demonstrating that Philadelphia conducted its coverage investigation in bad faith and with undue delay." Reply, docket #52 at 7. However, the cases Plaintiff cites do not necessarily support Plaintiff's position here. For example, in *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996), the court found that "a naked claim of bad faith cannot, without more, authorize a fishing expedition into privileged communications. Thus, a mere allegation of bad faith is insufficient to overcome the work product privilege." The *Logan* court asserts that a plaintiff must demonstrate "some likelihood or probability" that the documents it seeks may contain evidence of bad faith. *Id.* In *Bishelli v. State Farm Mut. Auto. Ins. Co.*, No. 07-cv-00385-WYD-MEH, 2008 WL 280850, at *2 (D. Colo. Jan. 31, 2008), this Court cited *Logan* and determined that an *in camera* review was necessary to determine whether the documents "show the possibility that they contain evidence of bad faith."

Here, the Court has conducted such review of the unredacted documents listed above, and concludes they contain no evidence of bad faith on the part of Defendant. As such, the Court finds that the Plaintiff has failed to demonstrate a substantial need for the challenged documents and concludes that the documents are not discoverable.

3.      Documents re: Reserves[4]

_____

[4]Defendant also lists on its privilege logs certain documents concerning "invoices" or "expenses" that are withheld pursuant to the attorney-client and work product privileges. The Court questions the application of privileges to these documents; however, the Court finds, in the first

Defendant contends that, in Colorado, "information regarding reserve information, and information used to determine reserves and settlement authority, are not relevant and therefore not discoverable." Response, docket #43 at 14. Defendant cites *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649 (Colo. 2012) for its contention. However, the facts in *Sunahara* are materially different than those in this case and, as set forth in *Sunahara*, are distinguishable. Like in this case, the claim in *Sunahara* was a first-party claim; however, unlike here, the claim was for uninsured motorist (UIM) benefits. The court likened Sunahara's claim to a third-party claim in that the "UIM context of this case ... places the insurance company in the 'unique role' of becoming almost adversarial to its own insured .... As such, the scope of discovery of reserves and settlement authority in first-party UIM actions is similar to the scope of discovery in third-party actions ..., because the relationship between the parties is similarly adversarial." *Id.* at 657 (citations omitted).

Conversely, as is relevant to this case, the *Sunahara* court found:

> Furthermore, ... reserves and settlement authority – and, under our reasoning in this case, the liability assessments and fault evaluations underlying those figures as well – might be relevant and reasonably calculated to lead to admissible evidence when a first-party plaintiff sues his or her insurance company for bad faith or for a declaratory judgment. In bad faith and declaratory judgment actions, evidence of reserves and settlement authority could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim.

*Id.* at 657-58 (citing *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1193 (Colo. 2002) ("[t]he scope of discovery has ... been traditionally broader in first-party disputes between an insured party and his or her insurer. Reserves have been correspondingly more likely to be found discoverable in such

---

instance, that the Plaintiff fails to make any argument concerning these documents and, thus, fails to demonstrate they are relevant to this matter. *See Martin*, 150 F.R.D. at 172-73. The Court concludes that these documents are not facially relevant and, therefore, need not be produced.

actions")).   Here, the Plaintiff brings claims for breach of the covenant of good faith and fair dealing/insurer bad faith with respect to Defendant's denial of its first-party claim.   Defendant contends that reserves are intended to satisfy statutory and regulatory requirements and, thus, are not evidence of an insurer's valuation of a claim.   Response, docket #43 at 15.   However, the Court finds that reserve information may be relevant for the purposes set forth in *Sunahara* and *Silva*. Therefore, the Court concludes that reserve information dated prior to June 30, 2011 in this case is relevant and discoverable.

## III.   Documents to be Produced

In sum, this Court has determined that communications and information dated prior to June 30, 2011 concerning reserve information and whether Plaintiff's claim for reimbursement of defense costs is covered under the applicable policy are relevant, but not privileged, and should be disclosed. However, the Court has also determined that communications and information regarding Plaintiff's counsel's rates, approval of its law firm and allocation of fees between prosecution and defense costs are protected by the attorney-client privilege and by the work-product privilege as of April 6, 2011, and are protected from disclosure.   Furthermore, the Court finds that reserve information is relevant and discoverable here, but expense information is not.   Based upon these findings, the Court directs the Defendant to produce the following documents, subject to qualifications as stated in accompanying footnotes:

| | | | | |
|---|---|---|---|---|
| CF00149 | CF00164 | CF00185-208 | CF00209 | CF00248-53 |
| CF00257-58 | CF00259-61[5] | CF00264-66[6] | CF00301 | CF00302[7] |

---

[5]Produce CF00259 with redactions of the second and third paragraphs of Kelly Nugent's March 14, 2011 1:28 email to Sue Shue, and of the third paragraph of Sue Shue's March 14, 2011 12:32 email to Ann Bronczyk and Kelly Nugent.   Produce CF00260 with redactions of the last sentence in the March 14, 2011 7:22 email from Nugent to Shue, the second paragraph in the

CF00314-15        CF00316-17[8]        CF00319        CF00320        CF00360-66[9]
CF00367-70[10]    CF00371-74[11]       CF00395-96[12] CF00397        CF00401

_____

February 4, 2011 6:45 email from Nugent to "claimmail," and the last sentence in March 11, 2011 3:33 email from Shue to Nugent.  Produce CF00261 with redactions of the entirety of the February 7, 2011 4:30 email from Nugent to Shue and the entirety of the February 7, 2011 15:48 email from Shue to Nugent.

[6]Produce CF00264 with redaction of the last sentence in the March 14, 2011 7:22am email from Nugent to Shue.  Produce CF00265 with redactions of the last sentence in March 11, 2011 3:33 email from Shue to Nugent, the entirety of the February 7, 2011 4:30 email from Nugent to Shue and the entire content of the February 7, 2011 15:48 email from Shue to Nugent.

[7]Produce CF00302 with redactions of the eighth, ninth and tenth sentences of the claim note.

[8]Produce CF00316 with redactions of all content of the email message EXCEPT the third and fourth sentences of the fifth (second to last) paragraph.

[9]Produce CF00360 with redaction of the sixth sentence in the June 21,2011 8:10 email from Shue to Bronczyk.  Produce CF00361 with redactions of the second sentence (first on the page) of the June 20, 2011 7:19 email from Nugent to Shue.  Produce CF00362 with redactions of the first two sentences of the June 17, 2011 1:00 email from Shue to Nugent, and the entire content of the June 13, 2011 1:09 email from Nugent to Shue (continuing to CF00363).  Produce CF00363 with redactions of the first two paragraphs of the June 7, 2011 2:37 email from Nugent to Shue.  Produce CF00364 with redactions of the entire content of the June 7, 2011 2:17 email from Shue to Nugent.

[10]Produce CF00367 with redactions of the first two sentences of the June 17, 2011 1:00 email from Shue to Nugent.  Produce CF00368 with redactions of the entire content of the June 13, 2011 1:09 email from Nugent to Shue, and the first two paragraphs of the June 7, 2011 2:37 email from Nugent to Shue.  Produce CF00369 with redactions of the entire content of the June 7, 2011 2:17 email from Shue to Nugent.

[11]Produce CF00371 with redactions of the first two sentences of the June 17, 2011 1:00 email from Shue to Nugent, and the entire content of the June 13, 2011 1:09 email from Nugent to Shue.  Produce CF00372 with redactions of the first two paragraphs of the June 7, 2011 2:37 email from Nugent to Shue.  Produce CF00373 with redactions of the entire content of the June 7, 2011 2:17 email from Shue to Nugent.

[12]Produce CF00395 with redaction of the entire content of the June 21, 2011 8:49 email from Shue to Nugent.  Produce CF00396 with redaction of the fourth paragraph of the June 21, 2011 8:30 email from Nugent to Shue.

| | | | | |
|---|---|---|---|---|
| CF00454-56[13] | CF00458 | CN005[14] | CN006[15] | CN007[16] |
| CN008[17] | CN009[18] | CN010 | CN011 | CORR0001 |
| CORR0048 | CORR0094 | CORR0141[19] | CORR0187 | CORR0235 |
| CORR0243 | CORR0248 | CORR0266-67[20] | CORR0269 | CORR0319-20 |
| CORR0729 | CORR0809 | CORR0820 | | |

Defendant shall produce to the Plaintiff copies of these documents, redacted (if applicable) in accordance with this order, on or before April 16, 2013.

## **CONCLUSION**

Accordingly, for the reasons stated above, it is hereby ORDERED that the Plaintiff's Motion to Compel [filed February 21, 2013; docket #27] is **granted in part** and **denied in part** as set forth herein. All requests for attorney's fees are denied pursuant to Fed. R. Civ. P. 37(a)(5)(C).

---

[13]Produce CF00455 with redactions of the last sentence in March 11, 2011 3:33 email from Shue to Nugent, the entire content of the February 7, 2011 4:30 email from Nugent to Shue. Produce CF00456 with redaction of the entire content of the February 7, 2011 15:48 email from Shue to Nugent.

[14]Produce CN005 by removing redactions to claim notes 13 and 14 (may keep other existing redactions).

[15]Produce CN006 by redacting ONLY claim notes 3, 5, 6, 7, 8, and 9.

[16]Produce CN007 by redacting ONLY claim notes 1, 2, the last sentence in 6, the eighth, ninth and tenth sentences of 8, 9 and 11 (continued on CN008).

[17]Produce CN008 by redacting ONLY claim notes 1, 2, the third sentence of 3, the first sentence of 5, 6, 7, and the last two sentences of 11.

[18]Produce CN009 by redacting ONLY claim notes 2, 4, and 11.

[19]Produce CORR0141 by redacting ONLY the hand-written notes.

[20]Produce CORR0266 with redactions of the last sentence in March 11, 2011 3:33 email from Shue to Nugent, the entire content of the February 7, 2011 4:30 email from Nugent to Shue. Produce CORR0267 with redaction of the entire content of the February 7, 2011 15:48 email from Shue to Nugent.

Dated at Denver, Colorado, this 2nd day of April, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge